UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DISTRICT OF COLUMBIA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-1941 (RMC) |
| MICHAEL WALKER, | ) ) ) | |
| Defendant. | ) ) | |

**OPINION**

Michael Walker is the father of J.W., a disabled child. J.W. is eligible to receive special education services under the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400-1487. A Hearing Officer found that the individualized educational program (IEP) that the District of Columbia created for J.W. complied with the statute, but that the IEP should be amended to include a residential school placement based on a psychiatrist's recommendation. The District of Columbia moves for summary judgment, seeking to vacate partially the Hearing Officer's Decision. The District was unaware of the psychiatrist's recommendation at the time it created the IEP. Mr. Walker seeks to affirm the Hearing Officer's Decision and to compel the District of Columbia to reimburse him for J.W.'s residential placement at a boarding school, the Asheville Academy for Girls.

**I. FACTS**

**A. Statutory Framework**

The Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. § 1400 *et seq.*, "aims to ensure that every child has a meaningful opportunity to benefit from

1

public education." *Boose v. District of Columbia*, No. 14-7086, 2015 WL 3371818, at *1 (D.C. Cir. May 26, 2015). The statute ensures that "all children with disabilities have available to them a free appropriate public education [or FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Under IDEA, school systems must promptly identify, locate, and evaluate every child with disabilities residing in the district who is in need of special education and related services. *Id*. § 1412(a)(3)(A). When a disabled child is identified, the child's parents, teachers, school officials, and other professionals collaborate in an "IEP team" to develop an individualized educational program (IEP) to meet the child's unique needs. *See id.* §§ 1412(a)(4), 1414(d)(1)(B). The IEP is a written statement that includes goals and instructional objectives for the student's education, services to be provided, projections regarding the dates on which such services are to be offered, and criteria for evaluating whether instructional objectives are met. *Id*. §§ 1401(14), 1414(d)(1)(A). The IEP team may determine that in order to benefit from special education, the student requires "related services"—*i.e.*, non-educational, supportive services such as physical and occupational therapy and psychological counseling. *See id*. § 1414(d)(1)(B); 34 C.F.R. § 300.24(a). "[T]he IEP must, at a minimum, provide personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction . . . . If no suitable public school is available, the [school system] must pay the costs of sending the child to an appropriate private school." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005). A disabled child can be reevaluated if the school determines it is warranted to meet the child's needs or if the child's parent or teacher requests a reevaluation. 20 U.S.C. § 1414(a)(2)(A). A reevaluation "shall occur (1) not more frequently than once a year, unless the parent and the [school] agree

otherwise; and at least once every 3 years, unless the parent and the [school] agree that a reevaluation is unnecessary." *Id*. § 1414(a)(2)(B).

To determine whether a FAPE has been provided, courts must determine whether: (1) the school complied with the IDEA's procedures; and (2) the IEP developed through those procedures was reasonably calculated to enable the student to receive educational benefits. *Loren F. v. Atlanta Indep. Sch. Sys*., 349 F.3d 1309, 1312 (11th Cir. 2003). While the District of Columbia is required to provide disabled students a FAPE, it is not required to, and does not guarantee, any particular outcome or any particular level of academic success. *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If a parent objects to the identification, evaluation, or educational placement of a disabled child, or whether she is receiving a FAPE, the parent may seek a due process hearing before a D.C. Hearing Officer, who issues a determination known as a Hearing Officer Decision or HOD. 20 U.S.C. §§ 1415(b)(6), 1415(f)(1)(A). If a party is dissatisfied with that decision, it may appeal to a state court or a federal district court. *See id.* § 1415(i)(2)(A).

**B. Background**

J.W. is an eleven-year-old student with significant social emotional issues; she has had five psychiatric hospitalizations since October 2012. Administrative Record (AR) [Dkt. 5] at 7-8. The October 2012 hospitalization was precipitated by an incident during which J.W. experienced command hallucinations to harm herself and her younger twin brothers and she attempted to push the twins down a flight of stairs. AR at 7. At the beginning of the 2013-14 school year, J.W. attended St. Patrick's Episcopal Day School, a private non-special education

school in the District of Columbia.[1] *Id*. at 8. Due to significant psychiatric issues, her father obtained an independent psychological evaluation and, on September 18, 2013, J.W. was diagnosed with "Post Traumatic Stress Disorder, Disruptive Mood Disorder, Specific Learning Disorder with Impairment in Mathematics with impaired accuracy and fluency of calculations, moderate severity, Language Disorder, and Reactive Attachment Disorder." *Id*.

Based on this psychological evaluation, on November 20, 2013, Mr. Walker requested that the District identify J.W. as a student with a disability and provide her with an IEP. *Id*. Soon thereafter, J.W.'s mental health deteriorated and she was hospitalized. After her release from the hospital, on January 23, 2014, Mr. Walker unilaterally placed J.W. at a private boarding school, Asheville Academy for Girls, located Asheville, North Carolina. *Id*. The Asheville Academy has not been approved by the D.C. Office of the State Superintendent of Education (OSSE) as a residential treatment facility, and it has not been approved by its own state, North Carolina, for special education placement. HOD 10/14/14 [Dkt. 6-1] at 8.

On March 24, 2014, Mr. Walker filed a due process complaint against District of Columbia Public Schools (DCPS), alleging that the District failed to identify J.W. as a disabled student in need of educational services. Compl. [Dkt. 1] ¶ 10. The due process complaint resulted in a May 28, 2014 Hearing Officer Decision, which ordered the District to determine J.W.'s eligibility and to develop an IEP by June 30, 2014. *See id*. ¶ 14; HOD 5/28/14 [Dkt. 6-2] at 10.

On June 16, 2014, the parties convened an eligibility meeting, and J.W. was found to be disabled and eligible for services under IDEA. Compl. ¶ 16. On June 27, 2014, three days before the June 30 deadline, the District developed an IEP for J.W. The IEP consisted of goals,

---

[1] J.W. has never attended a District of Columbia Public School. Compl. [Dkt. 1] ¶ 7.

services, and accommodations, including 26.5 hours of specialized instruction outside of a general education setting and 240 minutes of counseling per month. *Id.* ¶ 17; HOD 10/14/14 at 2. DCPS proposed to place J.W. in a program for students with emotional and behavioral difficulties located at a DCPS middle school. HOD 10/14/14 at 2. On July 8 and again on July 28, 2014, Mr. Walker wrote to the District, complaining that J.W.'s placement was inappropriate. *Id.* He sent the District a July 22, 2014, letter from J.W.'s treating psychiatrist in Asheville, Dr. Sarah Wells. In her letter, Dr. Wells stated:

> [I]t is my strong opinion that [J.W.] requires ongoing residential treatment. She has had numerous behavioral concerns and issues with medication compliance. She has also suffered from psychotic symptoms and dissociation. . . . She was unable to maintain normal functioning in an outpatient environment, and she continues to need a higher level of care.

AR at 147.

On August 13, 2014, Mr. Walker filed a due process complaint, claiming that the non-residential placement constituted a denial of FAPE because J.W. can only access her education in a residential setting. *Id.* at 11; HOD 10/14/14 at 2-3. The Hearing Officer held a pre-hearing conference on August 29, 2014, and issued an order on September 4, 2014, setting forth the issues to be litigated:

> (1) Whether the District denied J.W. a FAPE by failing to provide her an appropriate IEP or placement at the June 27, 2014 meeting; and
>
> (2) Whether Mr. Walker should be awarded compensation for delays in providing J.W. with a proper placement.

*Id.* at 3. The Hearing Officer restated the issues at the beginning of the due process hearing on September 29, 2014, and the parties agreed that these were the issued to be litigated. *Id.* at 3 n.3. The due process hearing was continued on October 6, and the Hearing Officer rendered a Decision on October 14, 2014. *Id.* at 1.

5

The Hearing Officer determined that Mr. Walker did not sustain his burden of proving that the IEP developed for J.W. at the June 27, 2014 meeting was not reasonably calculated to provide the student educational benefit at the time it was developed.[2] However, the Hearing Officer also decided, based on evidence presented at the hearing that was not available to the IEP team, that J.W. was in need of a residential placement. *Id*. at 9-13. The Hearing Officer found that Dr. Wells testified credibly at the due process hearing, and that while J.W.'s condition had improved since she began attending the Asheville Academy in January 2014, she required "ongoing residential treatment because of her behavioral concerns and issues with medication compliance and she would be unable to maintain normal functioning in an outpatient environment and a full time day program without any significant safety risks." HOD 10/14/14 at 9. As a result, the Hearing Officer ordered DCPS to amend J.W.'s IEP to include residential placement. He further ordered DCPS to (1) find a residential placement or assist Asheville Academy in obtaining OSSE-approval to serve as J.W.'s residential placement and (2) reimburse Mr. Walker for the costs of J.W.'s attendance at the Asheville Academy. *Id*. at 13-14.

The District of Columbia appealed, arguing that the Hearing Officer erroneously decided issues outside those identified for adjudication. The District moved for a temporary restraining order and preliminary injunction staying the October 14, 2014 HOD. Mr. Walker objected. The Court held a hearing on December 4, 2014, and granted in part and denied in part the request for injunction. *See* Order 12/4/14 [Dkt. 9].

---

[2] The Hearing Officer also found that Mr. Walker should be awarded $3,600 in compensation for the delay in providing an appropriate placement. Because the parties agreed that the Hearing Officer erred in ordering $3,600 in reimbursement for the student's tuition and related services for June 2014, the Court stayed the $3,600 reimbursement requirement. *See* Order 12/4/14 [Dkt. 9]; *see also* Order 1/16/15 [Dkt. 14]. The reimbursement requirement of $3,600 will be vacated with the Order accompanying this Opinion.

At the December 4 injunction hearing, counsel for Mr. Walker argued that J.W. currently required a residential placement. Counsel represented she was making progress at the Asheville Academy, and that there was no appropriate residential placement available in the District of Columbia. To preserve the status quo pending a decision on the merits, the Court (1) took under advisement the District's request to stay its reimbursement for tuition and costs of Asheville Academy and (2) ordered the District of Columbia to convene a meeting of the IEP Team and determine the educational placement for J.W. by January 6, 2015. *See* Order 12/4/14 [Dkt. 9]. The Court directed that an appropriate residential placement would be "presumptively the correct placement" for J.W., unless the IEP Team were to articulate why a residential placement is not required. *Id*. at 2.

An IEP meeting was convened on December 18, 2014. The Asheville Academy program director, Bryan Tomes, and J.W.'s therapist at Asheville, Heidi Anderson, attended the meeting by phone. *See* Notes [Dkt. 11-3] at 1. Mr. Tomes and Ms. Anderson indicated that J.W. was receiving about nine hours of therapy per week. *Id*. at 2. When J.W. first came to the Academy in January 2014, the therapist had to intervene about once per week due to J.W.'s behavioral issues; as of December 2014, the therapist found she needed to intervene only once per month. *See* Notes [Dkt. 11-2] at 2. Mr. Walker submitted a December 16, 2014 letter from Dr. Wells stating that J.W. "continues to work through difficult issues related to her trauma history, and needs the close proximity of support staff and her therapist . . . Given her symptoms, she is unable to access her educational needs outside a residential treatment setting. . . . I feel that she would not be able to function well in the outpatient/home environment at this time." Notes [Dkt. 11-3] at 5. Despite Dr. Wells' opinion, the District took the position that it could

7

meet J.W.'s needs in a full time day setting, in a program with a maximum of ten students, a teacher, a behavior technician, and an aide.[3] *Id*. at 4.

As a result of the meeting, J.W.'s IEP remained unchanged and the District offered placement in a non-residential program at Whittier Education Campus, a D.C. public school with the programming to meet J.W.'s needs. *See* Letter to Parent 12/23/14 [Dkt. 11-6]. Mr. Walker rejected this placement and opted to maintain J.W.'s enrollment at Asheville Academy.

The Court held a status conference on January 7, 2015.[4] Afterward, the parties met and conferred. They agreed that the District's motion to stay the October 14, 2014 HOD should be granted in part and denied in part and that the District would partially reimburse Mr. Walker for J.W.'s placement at the Asheville Academy pending resolution of this case on the merits. *See* Supplement 1/14/2015 [Dkt. 13]. The Court entered an Order effectuating the parties' agreement and ordering the District of Columbia to reimburse Mr. Walker for the student's tuition and related services at Asheville Academy going forward, less $500.00 for each school year, unless and until an appropriate OSSE-approved residential school is identified and a reasonably comprehensive transition plan is developed. Order 1/16/15 [Dkt. 14] at 1-2. The Court expressly recognized that the District's appeal of the October 12, 2014 HOD was not rendered moot, and ordered the parties to finish briefing on the District's motion for summary

---

[3] The IEP team considered little in the way of current facts regarding the student—Dr. Wells did not provide any facts to support her opinion, and no one from DCPS met J.W. or conducted an evaluation.

[4] At that hearing, the District represented that it had earlier offered J.W. a residential placement at Devereaux, a behavioral healthcare center in the District of Columbia, but Mr. Walker rejected the placement as too restrictive.

judgment.  *Id*.  The motion for summary judgment is now fully briefed and ready for decision.  *See* Mot. for Summ. J. (MSJ) [Dkt. 6]; Opp'n [Dkt. 12]; Reply [Dkt. 15].

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.*  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

In an IDEA case, a court must review the administrative record and it may hear additional evidence at the request of a party; the court bases its decision on the preponderance of

9

the evidence, granting such relief it deems appropriate. 20 U.S.C. § 1415(i)(2)(B)(iii). A court gives "due weight" to the HOD and does not substitute its own view of sound educational policy for that of the hearing officer. *See Rowley*, 458 U.S. at 206. Moreover, the burden of proof is with the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid*, 401 F.3d at 521 (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)). If neither party requests that the court hear additional evidence, then the court may determine the case based on the administrative record on summary judgment. *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997). Here, neither party has requested that the Court hear additional evidence; thus, the Court bases its decision on a review of the administrative record. *See* AR [Dkt. 5].

### III. ANALYSIS

When reviewing an administrative decision under the IDEA, a court must determine whether the procedural requirements were met and whether the IEP, including the student's placement, was reasonably calculated to enable the child to receive educational benefits. *Shaw v. Dist. of Columbia*, 238 F. Supp. 2d 127, 134 (D.D.C. 2002) (citing *Rowley*, 458 U.S. at 206-07). The IDEA establishes a "basic floor of opportunity"; it does not require that a school provide the very best educational experience. *Rowley*, 458 U.S. at 201. School districts must provide "an educational benefit" by providing an appropriate education. *Id*. "[P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373-74 (1985). If the court determines that the IEP and placement proposed by school officials was appropriate, the parent is not entitled to reimbursement for the unilateral placement of the child at a private school. *Id*. at 374.

In this case, the Hearing Officer determined that Mr. Walker did not meet his burden of proving that J.W. was in need of a residential placement at the time the IEP was formulated on June 27, 2014. However, the Hearing Officer also determined that, at the time of the HOD, the IEP placement in a day school was inappropriate because J.W. needed residential placement. HOD 10/14/14 at 9. The Hearing Officer credited Dr. Wells' testimony. *Id.*

The Hearing Officer's ruling was beyond the issue that the parties agreed to litigate, *i.e.*, whether the District denied J.W. a FAPE by failing to provide her an appropriate IEP or placement at the time the June 27, 2014 IEP was formulated. The due process complaint described the issue as whether DCPs denied J.W. a FAPE by failing to provide her an appropriate IEP or placement at the June 27, 2014 meeting *or thereafter*. AR at 10. However, the phrase "or thereafter" was dropped at the pre-hearing conference, and the parties agreed to the change. HOD 10/14/14 at 3 n.3.

The issue was properly defined at the pre-hearing conference because the adequacy of an IEP can be measured only at the time it is formulated, not in hindsight. "[T]he measure and adequacy of an IEP can only be determined as of the time it is offered to the student. Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement." *S.S. ex rel. Schank v. Howard Road Academy*, 585 F. Supp. 2d 56, 66 (D.D.C. 2008) (quoting *Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143, 1149 (10th Cir. 2008)). An IEP "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204. "An IEP is a snapshot, not a retrospective. In striving for 'appropriateness,' an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is at

11

the time the IEP was promulgated." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 992 (1st Cir. 1990).

The Hearing Officer found that Mr. Walker did not sustain his burden of proving that the June 27 IEP was not reasonably calculated to provide J.W. an educational benefit at that time. *See* HOD 10/14/14 at 9. Mr. Walker does not challenge this finding. Instead, he asserts that the IEP was inappropriate based on subsequent evidence, *i.e.*, Dr. Wells July 22, 2014 letter and her testimony at the due process hearing. Because an IEP must be evaluated as of the date it was created, the Hearing Officer erred when he relied on evidence that was not presented to the IEP Team. Based on the evidence presented to the IEP Team, the IEP was appropriate in June 2014.[5] *Id.*

## IV. CONCLUSION

For the reasons stated above, the Court will grant the District of Columbia's motion for summary judgment [Dkt. 6], and judgment will be entered in favor of the District. The October 14, 2014 Hearing Officer Decision will be affirmed in part and vacated in part as follows: The HOD finding that the June 27, 2014 IEP was reasonably calculated to provide J.W. an adequate education at the time the IEP was formulated will be affirmed, and the $3,600

---

[5] Residential placement may be necessary to provide a student a FAPE under the IDEA. To determine whether a residential placement is appropriate, a court must analyze "whether full time placement may be considered necessary for educational purposes, or whether the residential placement is a response to medical, social or emotional problems that are segregable from the learning process." *McKenzie v. Smith*, 771 F.2d 1527, 1534 (D.C. Cir. 1985). "Residential placement may be necessary when the disabled child needs a highly structured environment in order to obtain any kind of educational benefit. . . . School districts are not, however, financially responsible for the placement of students who need twenty-four-hour supervision for medical, social, or emotional reasons, and receive only an incidental educational benefit from that placement." *Munir v. Pottsville Area Sch. Dist.*, 723 F. 3d 423, 431 (3d Cir. 2013). This issue was not raised before the IEP team, was not addressed by the Hearing Officer, and is not before this Court.

reimbursement requirement set forth in the HOD will be vacated.  The requirement that the District reimburse Mr. Walker partially for tuition and costs at Asheville Academy, as set forth in the Order [Dkt. 14], shall cease to have effect as of as this date.  The District (via the IEP team) shall reevaluate J.W. based on current information and shall consider (1) whether the IEP requires modification and (2) whether residential placement is appropriate.[6]  The parties shall file a status report as directed by Court Order.  This Opinion is accompanied by a memorializing Order.

Date:  June 12, 2015                             /s/                       
ROSEMARY M. COLLYER
United States District Judge

---

[6] By way of this litigation, Mr. Walker has request that J.W. be reevaluated.  20 U.S.C. § 1414(a)(2)(A) (a disabled child can be reevaluated if the child's parent so requests).  J.W. was last evaluated in June 2014.